WILLIAM M. NARUS, CAB #243633
Acting United States Attorney
District of Oregon
**GREGORY R. NYHUS, OSB #913841**
greg.r.nyhus@usdoj.gov
**MIRA CHERNICK, MAB #696845**
mira.chernick@usdoj.gov
Assistant United States Attorneys
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:25-cr-00131-IM |
| v. | |
| JASON DAVID CAMPOS, | **GOVERNMENT'S MOTION TO REVOKE RELEASE ORDER** |
| **Defendant.** | |

The United States respectfully moves this Court to review the order of release entered by

the Honorable Jeremy D. Peterson of the Eastern District of California under case number 2:25-

mj-00067-JDP (EDCA ECF No. 6), and to stay the order until a hearing can be conducted,

pursuant to 18 U.S.C. § 3145(a).

The government is prepared to proceed to a review hearing before this Court without

delay to avoid any prejudice to the defense that might otherwise result from a stay.

This Court should hold a detention hearing because defendant poses a serious risk of

flight and of interference with the victim in this case.  18 U.S.C. § 3142(f)(2).  It should order

**Government's Motion to Revoke Release Order**                                    **Page 1**

defendant detained pre-trial because no combination of release conditions will reasonably mitigate those risks, or the additional risks he poses of non-appearance and to community safety. 18 U.S.C. § 3142(e)

## I.     PROCEDURAL POSTURE

On April 9, 2025, the grand jury returned an indictment alleging that between 2009 and 2023, defendant engaged in a campaign of cyberstalking, a violation of 18 U.S.C. § 2261A(2)(B), wire fraud, a violation of 18 U.S.C. § 1343, and aggravated identity theft, a violation of 18 U.S.C. § 1028A. ECF No. 1.

A warrant was issued and executed on April 22, 2025.  On that same day, defendant made his initial appearance on the Indictment in the Eastern District of California before the Honorable Jeremy D. Peterson, under case number 2:25-mj-00067-JDP. EDCA ECF No. 1.  He was arraigned on the Indictment and was temporarily detained pending a detention hearing on April 25, 2025.  Defendant was interviewed by Pretrial Services who recommended release on conditions, including a $100,000 cash bond, location monitoring, and conditions restricting his access to the internet.  Defendant was afforded a release hearing at which the government opposed release and argued for detention as a risk of flight and a danger to the community.

Following argument from the government and defendant, Judge Peterson ordered defendant released on a $300,000 secured cash bond and other conditions. At the government's request, the court stayed the release order until Tuesday, April 29, at noon, to permit the Government to seek a stay and review of the release order from this Court.  EDCA ECF No. 6.

## II.     LEGAL STANDARD

Review of a magistrate judge's release order is *de novo*.  *United States v. Koenig*, 912 F.2d 1190, 1192-93 (9th Cir. 1990).  The Court, however, "is not required to start over in every

**Government's Motion to Revoke Release Order**                                                   **Page 2**

case, and proceed as if the magistrate's decision and findings did not exist." *Id*. at 1193.  Rather,

the court should "review the evidence before the magistrate and make its own independent

determination whether the magistrate's findings are correct, with no deference." *Id.*

Under the Bail Reform Act of 1984, the government may move for pretrial detention only

in cases that fall into one of seven categories.  18 U.S.C. § 3142(f)(1)(A)-(E), (2)(A)-(B); *see*

*also United States v. Twine*, 344 F.3d 987 (9th Cir. 2003).  In addition to cases in which the

defendant is charged with a dangerous crime, as listed in 18 U.S.C. § 3142(f)(1), the government

may also seek detention in cases involving a serious risk that the defendant will flee prosecution,

that he will attempt to obstruct justice, or that he will attempt to threaten, injure, or intimidate a

potential witness.  18 U.S.C. § 3142(f)(2).

So long as the government makes the threshold showing that the defendant falls under

either § 3142(f)(1) or § 3142(f)(2), the court is authorized to hold a hearing and decide whether

pretrial detention is warranted.  18 U.S.C. § 3142(e), (g).  Regardless of whether the detention

hearing is authorized under subsection (f)(1) or (f)(2), the court may evaluate all of the factors

listed in § 3142(g) to determine "whether there are conditions of release that will reasonably

assure the appearance of the person as required *and* the safety of the any other person and the

community." 18 U.S.C. § 3142(g). The government bears the burden of establishing danger by

clear and convincing evidence and risk of flight by a mere preponderance of the evidence.  *See*

*United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990).  The court may order detention if

either of those risks cannot be adequately mitigated.  18 U.S.C. § 3142(e).

18 U.S.C. § 3142(g) sets forth the statutory factors to consider: (1) the nature and

circumstances of the offense charged, including whether the offense is a crime of violence or

involves a minor victim; (2) the weight of the evidence against the person; (3) the history and

**Government's Motion to Revoke Release Order**                                                    **Page 3**

characteristics of the person, including the person's character, physical and mental condition,

family and community ties, employment, financial resources, past criminal conduct, history

relating to drug or alcohol abuse, and supervision status at the time of the current offense; and (4)

the nature and seriousness of the danger to any person or the community that would be posed by

the defendant's release.  18 U.S.C. § 3142(g).

Finally, the Federal Rules of Evidence do not apply in pretrial detention proceedings.

Fed. R. Evid. 1101(d)(3); 18 U.S.C. § 3142(f).  Accordingly, both the government and the

defense may present evidence by proffer or hearsay.  *United States v. Winsor*, 785 F.2d 755, 756

(9th Cir. 1986); *see also United States v. Bibbs*, 488 F. Supp. 2d 925, 925-26 (N.D. Cal. 2007).

III.    **DEFENDANT PRESENTS A SERIOUS RISK OF FLIGHT, WHICH
       AUTHORIZES THIS COURT TO HOLD A DETENTION HEARING**

Defendant is not charged with a crime listed under 18 U.S.C. § 3142(f)(1).  The Eastern

District of California granted the government's motion for a detention hearing based on

defendant's flight risk.  18 U.S.C. § 3142(f)(2).

As with risk of nonappearance, the government must make this threshold showing by a

"mere preponderance."  *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).

Although courts have distinguished § 3142(f)'s "serious risk of flight," from § 3142(e)'s risk of

nonappearance—reading a greater level of intentionality into the former—the inquiries are

informed by the same set of facts and factors.[1]  Those include incentives to flee, ability to flee,

ties to the community, and the defendant's reliability and trustworthiness.  *See United States v.*

*Santos-Flores*, 794 F.3d 1088 (9th Cir. 2015).

---

[1] *See United States v. Molina-Orantes*, No. 25-cr-00079-AN, 2025 WL 1177654, at *7 (Apr. 23,
2025) (collecting cases).

**Government's Motion to Revoke Release Order**                                    **Page 4**

Here, defendant presents a serious flight risk. As detailed in the government's initial motion for a detention hearing, defendant has significant financial means, transferable skills, and a great deal to lose. *See* ECF No. 8. He purchased his house in 2022 for $1.5 million dollars and has multiple family members who could liquidate and transfer assets to him should he choose to leave the country to avoid prosecution. *See Aitken*, 898 F.2d at 107 (considering access to funds in flight risk analysis). He works as a software engineering manager at a financial technology company, a field that lends itself to remote work. And he faces a guidelines range of 30–37 months on the stalking charges, with a mandatory additional 24-month sentence for the aggravated identity theft, for a total of approximately five years in prison. *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990) (permitting consideration of sentencing exposure in assessing flight risk).

There is also a serious risk that defendant will attempt to threaten, injure, or intimidate Adult Victim 1 ("AV1"), the primary witness in this case. As detailed more fully below and in the government's earlier detention motion, defendant pursued a years-long campaign of harassment and intimidation against AV1. *See* ECF No. 8. His obsession with AV1 is obvious from his persistent stalking and harassment which was interrupted only by his incarceration for attempting to rape another young woman, whom he had also stalked. Neither his sex offender registration nor his parole status deterred him. AV1 is the only witness who can testify to key elements of the government's case against him. If defendant is released after learning of the Indictment, there is a serious risk that he will attempt to threaten, injure, or intimidate AV1 to prevent her from testifying, to punish her for her role in the government's case against him, or simply because he sees it as his last opportunity to torment her. This risk is not theoretical; defendant has already demonstrated that he knows AV1's general location, how to contact her,

**Government's Motion to Revoke Release Order**                    **Page 5**

and the name of her child. Thanks to his technological proficiency and the ubiquity of Cloud storage services, defendant likely still has access to AV1's nude images and the full legal file from her divorce. He has demonstrated his ability to impersonate her both to enlist strangers on the internet to harass and threaten her, and to obtain additional information about her through fraud. And he has also demonstrated his willingness to physically assault and attempt to harm women—like AV1—with whom he is sexually obsessed. The serious risk that defendant will flee or will attempt to threaten or harm AV1 necessitates a detention hearing. See 18 U.S.C. § 3142(f)(2).

IV.    **NO CONDITIONS CAN REASONABLY ASSURE DEFENDANT'S APPEARANCE AS REQUIRED AND PROTECT THE COMMUNITY FROM THE DANGER POSED BY DEFENDANT'S RELEASE**

This Court cannot fashion any combination of conditions that would reasonably assure Defendant's appearance at future proceedings. Defendant's personal circumstances and the nature and gravity of his offenses render defendant able and incentivized to flee, and no conditions could effectively mitigate that risk. Defendant also poses an obvious danger to the victim in this case and the community at large, particularly women. His conduct of stalking and terrorizing AV1 spans more than a decade, was interrupted only by his incarceration for burglary and sex related offenses, and resumed once he was released from that sentence on parole and with the requirement to register as a sex offender.

The government has previously detailed the offense conduct and the defendant's criminal history in the Government's Motion for Detention, ECF No. 8. The government incorporates those facts and argument herein.

Each of the relevant statutory factors weigh in favor of detention.

*The Nature and Circumstances of the Offenses*

The first factor—the nature and circumstances of the offense charged—contemplates consideration of not only the specific acts and charges alleged in the Indictment, but also the potential penalty that may be imposed if the person is convicted. *See, e.g.*, *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008); *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990) (noting defendants faced respectively penalties of 35 and 70 years if convicted).

As previously noted by the government, and as set forth in the Indictment, defendant's criminal conduct is egregious, persistent and repetitive. Over the course of 14 years, defendant published consensual intimate photos of a woman he dated in 2007 to a public website without her consent. He invited website viewers to video themselves ejaculating on printed photos of her and email the videos to her. He masqueraded as her on a popular chat application and engaged in sexual conversations with other unknown individuals to whom he sent the images, again asking chat participants to video themselves ejaculating on printed photos of her and email the videos to her. He sent intimate images to her attorney, spouse, and countless others. Defendant usurped her name and fraudulently obtained a copy of her divorce file from her attorney and used information in the file, including the name of her minor child, to taunt her.

The nature and circumstances of the offenses are serious, and the penalties are appropriately severe. The charge of aggravated identity theft carries a two-year mandatory minimum, consecutive to any other sentence imposed. The government anticipates a total offense level of 17, and a criminal history category of III, which yields an advisory guideline sentence of 30-37 months, consecutive to 24 months, for a total guideline sentence of 54-61 months (before departures). Given the significant sentence he is facing, his considerable means, and the remote and international nature of his work, defendant has both the incentive and the ability to relocate

abroad with his family rather than face prosecution in the United States. *See Townsend*, 897 F.2d at 995; *see also United States v. Cisneros*, 328 F.3d 610, 618 (10th Cir. 2003) (holding defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond and she had the means to do so).

The nature and circumstances of the offense also demonstrate the inability of any conditions to effectively mitigate the danger he poses to AV1 and the community, particularly women. Defendant terrorized his victim for over a decade, persisting in his online abuse and harassment even after being incarcerated for two years for stalking and attempting to rape another young woman. When he was released from prison, he was required to register as a sex offender and was on parole for approximately two years. Despite these conditions and the threat of reincarceration, defendant promptly resumed stalking the victim in the instant case. He then escalated his conduct by using his technological skills to create additional online accounts impersonating the victim, one of which he used to defraud her attorney and gain access to her privileged legal information and the name of her minor child.

Defendant's persistence and escalation of his offense conduct in the face of state supervision demonstrate that no conditions of pretrial release can reliably prevent him from threatening or intimidating the victim in this case or targeting other members of the community. And the technological sophistication defendant demonstrated through his conduct in this case— creating multiple fake online accounts which were exceptionally difficult to trace back to him, and using them to both spread and obtain highly sensitive and personal information about the victim—would make him particularly difficult to supervise effectively. The nature and circumstances of the offense weigh in favor of detention as both a flight risk and a danger. *See United States v. McLearen*, No. 5:24-CR-122-H-BV, 2024 WL 5248155, at *1 (N.D. Tex. Dec.

**Government's Motion to Revoke Release Order**                                    **Page 8**

30, 2024) (finding serious risk that defendant would attempt to harm his cyberstalking victim if released, since he created fake social media accounts and used them to disparage the victim, to impersonate her online, to solicit men to contact her for sexual purposes, and to send explicit images of the victim to her family members, among other conduct).

*The Weight of the Evidence*

The second factor is the weight of the evidence.  Although § 3142(g)(2) specifically enumerates weight of the evidence as a consideration in determining release, the Ninth Circuit has held that it is to be afforded less weight than the other statutory factors.  *See Townsend*, 897 F.2d at 994; *Winsor*, 785 F.2d at 757.  The weight of the evidence is, however, an important and relevant consideration in the Court's evaluation of whether a defendant "will fail to appear or will pose a danger to any person or to the community.  *Motamedi*, 767 F.2d at 1408.

Here, the weight of the evidence is substantial.  As noted in the government's original detention memo, there is substantial electronic and archival evidence linking defendant to his conduct.  ECF No. 8.  On February 28, 2023, federal agents executed a search warrant at defendant's house and seized a number of electronic devices. When his laptop was searched pursuant to the warrant, investigators found artifacts on the laptop showing that a specific IP address was used on that laptop; that same IP address was also used to create a post on the "cumonprintedpics" website on December 17, 2021, which contained two nude photographs of AV1.

Defendant's cell phone, searched in March of 2025, revealed that defendant searched for the phrase "[AV1] naked" 28 times between January 8, 2023 and February 28, 2023.  The last time defendant searched for this phrase was the morning the search warrant was executed.  Password and other account information for the various websites and emails identified in the Indictment were

**Government's Motion to Revoke Release Order**                    **Page 9**

located in his password keeper, including full chats from the Kik account in AV1's name. Investigators also found 28 photographs of erect penises and/or semen on printed pictures or phones displaying nude photographs of AV1 on defendant's phone.

Where, as here, the evidence of defendant's guilt is strong, it provides "a considerable incentive to flee." *United States v. Millan*, 4 F.3d 1038, 1046 (2d Cir. 1993); *see also Motamedi*, 767 F.2d at 1408; *United States v. Palmer-Contreras*, 835 F.2d 15, 18 (1st Cir. 1987) (where "the evidence against defendants is strong, the incentive for relocation is increased").

*The History and Characteristics of the Defendant*

This factor also weighs in favor of defendant's detention. Defendant has a proven unwillingness to abide by the conditions of supervision. Prior to his convictions for burglary and attempted rape, defendant apparently violated 29825(B) of the California Penal Code by failing to surrender a firearm, contrary to a court order requiring that he do so. Almost immediately following his release from prison, and while still on parole in California, defendant renewed his campaign of harassment. The only time the harassment ceased, other than when he was physically incapacitated, was when he was attempting to negotiate with the government for a favorable resolution of the instant case. The resolution he sought is now off the table, and his exposure has doubled. Defendant's history of ignoring conditions of supervision and committing new crimes while facing pending charges or on parole weighs in favor of detention.

*Danger to the Community*

Defendant's release would pose a danger to the community.

The legislative history of the Bail Reform Act of 1984 makes clear that Congress intended that the "safety of the community" language in Section 3142 be given a broad construction. *See* S. Rep. No. 225, 98th Cong., 1st Sess. 12 (1983), reprinted in 1984

**Government's Motion to Revoke Release Order**                                          **Page 10**

U.S.C.C.A.N. 3182, 3195 ("The reference to safety of any other person [in 3142(g)(4)] is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern, while the language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community."). The Committee explicitly noted that it intended that "the concern about safety be given a broader construction than merely danger of harm involving physical violence." *Id.* Defendant is a danger of both physical harm, as demonstrated by his attempted rape of the California victim, and broader harm, as demonstrated by the years of terror, anxiety, harassment, violations of privacy, and reputational harm that he inflicted on AV1.

As previously noted, and most significantly, a temporary hiatus in defendant's cyberstalking campaign occurred only when his stalking of another woman eventually ended in a conviction for Assault with the Intent to Commit Rape, First Degree Burglary (with the intent to commit a sexual offense), and Attempted First Degree Burglary (with the intent to commit a sexual offense). Defendant was sentenced to a term of 48 months, of which he served approximately half before being released on parole. Upon his release, and while on supervision, defendant resumed and escalated his cyberstalking campaign against the victim in this case. His persistence in sexually offending against young women, in person and online, for more than a decade and despite repeated police contact, incarceration, and state supervision, demonstrates the nature and seriousness of the danger he poses to the community. *See United States v. Busbin*, No. 3:23-CR-00182, 2024 WL 1313880, at *7 (M.D. Tenn. Mar. 27, 2024) (detaining cyberstalking defendant and finding it "particularly concerning" that he resumed his campaign of online harassment after being arrested for similar conduct).

**Government's Motion to Revoke Release Order**                                    **Page 11**

*No Conditions Will Reasonably Assure Defendant's Appearance*

The conditions of release imposed by the Magistrate Judge will not reasonably assure defendant's appearance—nor could any realistic set of restrictions do so in these circumstances. Clearly, defendant is a motivated, creative and computer-savvy predator whose release endangers the community.

As the Ninth Circuit has acknowledged in such circumstances, no restriction short of detention could reliably prevent flight. *See Townsend*, 897 F.2d at 995 ("Nor does the wearing of an electronic device offer assurance against flight occurring before measures can be taken to prevent a detected departure from the jurisdiction."). The existing release order, which does little more than direct defendant not to flee or to take obvious steps toward fleeing, offers no security at all. If anything, the release order only increases the defendant's incentive to flee, since it prohibits him from legally accessing the internet, making it impossible for him to continue his extremely remunerative employment. Given the choice between burning through his assets to remain in the United States and face the pending charges and associated sentence, and moving those assets abroad to resume a high-paying career that is particularly suited to both remote work and freelancing, there is a serious risk that defendant will choose the latter. If he does, his conditions of release will not stop him.

Nor does the existing release order adequately address the risk that defendant will resume his conduct against AV1. The conditions of release permit multiple computers and smart phones to remain at defendant's residence for his family members to use, while simply instructing that they be password-protected and that defendant not use them. Defendant is also permitted to leave his home for medical and religious purposes, trips during which he could obtain an internet-capable device for surreptitious use. Once he gains access to the internet, there is

**Government's Motion to Revoke Release Order**                                              **Page 12**

nothing to stop defendant from accessing images and personal information about AV1 that is stored in the Cloud from his previous activity and from continuing to use those images and information to threaten and intimidate AV1.  Defendant's technological sophistication and track record of successfully operating anonymously online would make it particularly hard to prevent him from doing so or to detect any violations of his pretrial conditions after the fact.  Just as he continued to prowl around the apartment of his California victim after police contacted him and warned him off, just as he returned to that apartment months later to physically attack the victim despite that prior police contact, and just as he resumed his campaign of threats, intimidation, and humiliation against AV1 after being released from prison on parole, defendant would once again have the ability and the motivation to commit additional crimes against women if granted pretrial release.

### V.    CONCLUSION

The government believes that defendant poses a high risk of flight and of interfering with the victim in this case if he is released, and that he poses a significant risk of danger to the community.  The government respectfully moves this Court to order he be detained.

Dated: April 28, 2025                                    Respectfully submitted,

                                                         WILLIAM M. NARUS
                                                         Acting United States Attorney

                                                         _/s/ Gregory R. Nyhus_
                                                         GREGORY R. NYHUS, OSB #913841
                                                         MIRA CHERNICK, MAB #696845
                                                         Assistant United States Attorneys