**WHITNEY P. BOISE, OSB No. 851570**
whitney@boisematthews.com
BOISE MATTHEWS LLP
121 SW Morrison St., Suite 700
Portland, OR 97204
Telephone: (503) 228-0487
Fax: (503) 227-5984

Of Attorneys for Defendant Jason David Campos

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br><br> v. <br><br> **JASON DAVID CAMPOS**, <br><br> Defendant. | Case No. **3:25-cr-00131-IM** <br><br> **DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION TO REVOKE RELEASE ORDER** |

Defendant Jason David Campos, by and through his attorneys, Whitney P. Boise and Boise Matthews LLP, hereby submits this response to the government's motion to revoke defendant's release order. The hearing on the government's motion is scheduled for Monday, May 5, 2025, at 10:00 a.m.

Page 1 –    DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION TO REVOKE RELEASE ORDER

As the Honorable Jeremy D. Peterson from the Eastern District of California recognized, detaining Mr. Campos pretrial is not an appropriate resolution here. This Court should conclude that pretrial release is appropriate, and issue an order releasing Mr. Campos under the following conditions:

- Posting either a cash bond of $100,000 or a property bond of $300,000.
- Be restricted to his home with electronic monitoring.
- No alcohol or other drugs, monitored with drug testing by Pretrial.
- Continue mental health and other treatment over the internet as authorized by the Pretrial Release Office.
- The other Special Conditions of Release set out by Judge Peterson (EDCA ECF 7).
- Allow Mr. Campos to be on his computer for work purposes only, as monitored by the Pretrial Release Office. Pretrial presently can install internet software on a computer to monitor use by a defendant. Depending on the nature of the work, Pretrial sometimes needs to inform the defendant's employer of the monitoring. Mr. Campos is amenable to that, if it is necessary.

This combination of conditions meets the Court's obligation to release a person "facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of the community." *United States v. Gebro,* 948 F.2d 1118 (9th Cir. 1991).

## I.    Law

Under the Bail Reform act, a defendant may only be detained pretrial in cases in which a pretrial detention hearing is authorized under 18 U.S.C. §§ 3142(f)(1) or (f)(2). As the government acknowledges, Mr. Campos is not charged with one of the five categories of serious crimes that authorizes a detention hearing under

Page 2 –     DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION
             TO REVOKE RELEASE ORDER

BOISE MATTHEWS LLP
121 SW Morrison St. Suite 700
Portland, OR 97204
Telephone: (503) 228-0487
Facsimile: (503) 227-5984

18 U.S.C. § 3142(f)(1). Thus, a detention hearing may be justified only if there is a "serious risk that such person will flee" or a "serious risk" the person will obstruct justice or intimidate a witness. 18 U.S.C. § 3142(f)(2). A "'serious risk of flight' under § 3142(f)(2)(A) is a great risk—beyond average—that the defendant will intentionally and actively move within or outside the jurisdiction to avoid court proceedings or supervision." *United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131, 1135, 1138 (D. Idaho 2023). If no detention hearing is justified, a defendant is to be released on personal recognizance or conditions. 18 U.S.C. § 3142(a).

If the Court concludes that the government has met its burden to have a detention hearing, the Court must determine whether the United States has proven that detention is appropriate. Pretrial detention imposes a significant loss of liberty that implicates the Due Process Clause of the Fifth Amendment and the Excessive Bail Clause of the Eighth Amendment. *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985). "[D]etention prior to trial . . . is the carefully limited exception" to liberty before trial. *United States v. Salerno*, 481 U.S. 739, 755 (1987). Thus, under the Bail Reform Act, a person facing trial should be released if some combination of conditions can "reasonably assure the appearance of the person as required and the safety of any other person and the community."[1] 18 U.S.C. § 3142(g). Pretrial release "should be denied only for the strongest reasons." *Motamedi*, 767 F.2d at 1407. "Doubts regarding the propriety of release should be resolved in favor of the defendant." *Id*. (citations omitted); *see also United Staes v. Santos-Flores*, 784 F.3d 1088, 1090 (9th Cir. 2015) ("Only in rare cases

---

[1] A "detention hearing involves more than just demonstrating risk of non-appearance" because it also "concerns whether 'any condition or combination of conditions . . . will reasonably assure the appearance of such person as required and the safety of any other person and the community. . . .'" *United States v. Spirea*, Case No. 3:24-cr-00383-2-AN (D. Or. Nov. 27, 2024) (ECF 186 at 14; quoting *Figueroa-Alvarez*, 681 F. Supp. 3d at 1139 n.5 (citations omitted)). "Thus, a defendant determined to be a serious risk of flight at the gatekeeping stage may nonetheless argue at the subsequent detention hearing that he or she should be released on conditions." *Id.* (citations omitted).

BOISE MATTHEWS LLP
121 SW Morrison St. Suite 700
Portland, OR 97204
Telephone: (503) 228-0487
Facsimile: (503) 227-5984

should release be denied, and doubts regarding the propriety of release are to be resolved in favor of the defendant.").

The government bears the burden of showing that no combination of conditions can be crafted to protect the community by clear and convincing evidence, and by a preponderance that no combination of conditions can reasonably assure that defendant will appear as required. *Gebro*, 948 F.2d at 1121. In assessing the government's showing, the Court considers:

> (1) the nature and seriousness of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug and alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

*Gebro*, 948 F.2d at 1121; 18 U.S.C. § 3142(g).

The Ninth Circuit has expressly held that, "Of these factors, the weight of the evidence is the least important, and the statute neither requires nor permits a pretrial determination of guilt. *United States v. Winsor,* 785 F.2d 755, 757 (9th Cir.1986); *Motamedi,* 767 F.2d at 1408." *Gebro*, 948 F.2d at 1121.

Once a magistrate has made a ruling on a detention hearing, either party "may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). A district court then reviews the detention order *de novo. United States v. Koenig*, 912 F.2d 1190, 1191-93 (9th Cir. 1990). As the government observed, however, the Court "is not required to start over in every case and proceed as if the magistrate's decision and findings did not exist." *Id.* at 1193. As the magistrate in the Eastern District of California recognized, there is a combination of conditions that make release appropriate here.

//

//

Page 4 –     DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION
             TO REVOKE RELEASE ORDER

## II.    Argument

Mr. Campos has lived in California for his entire life. He has been married for over 10 years and has two children ages 12 and 15. Those children are involved in numerous extracurricular activities and Mr. Campos has long been actively involved in their lives. He has lived in his current home for around 3 years, building up substantial home equity. He has been employed by a very reputable company for the last 5 years. He started out as a software engineer, has been promoted twice, and is now managing approximately 25 software engineers, and earning a very good salary. He has worked in the software engineering industry for over 15 years.

As the government emphasized, Mr. Campos is familiar with the criminal justice system. He knows that a prison term can result because of a guilty plea or—potentially—after a person has exercised his constitutional right to a trial. He has, indeed, served two years in prison.

On February 28, 2023, the government served a search warrant on Mr. Campos' home. Over the next 26 months, Mr. Campos did not run. The government does not allege that Mr. Campos tried to threaten or intimidate "AV1." The government does not allege that Mr. Campos continued to engage in the conduct that it asserts brings him before this Court.

Mr. Campos did promptly retain a criminal defense lawyer, first in the Eastern District of California and then in the District of Oregon. When a civil lawyer contacted Oregon defense counsel to report that said counsel represented AVI, Mr. Campos hired a civil lawyer who has begun discussions with AV1's civil lawyer.

During the *more than two years* that Mr. Campos was being advised by experienced federal counsel about the likelihood of a criminal indictment being returned in the District of Oregon, Mr. Campos could have moved himself—indeed his entire family—out of the United States without having violated any law. Understanding the

Page 5 –    DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION
TO REVOKE RELEASE ORDER

**BOISE MATTHEWS LLP**
121 SW Morrison St. Suite 700
Portland, OR 97204
Telephone: (503) 228-0487
Facsimile: (503) 227-5984

likelihood of an indictment, he continued to go to work, participate in his marriage, and support his children. The government asserts that now that an indictment has been returned Mr. Campos will do something he has not done for over two years: run. It does so without addressing a legitimate basis to believe that the information it has included as "new" information about his sentencing exposure pre- versus post-indictment given Mr. Campos' retention of experienced counsel. It does so without considering the impact either disappearing or uprooting his children would have on their busy preteen and teenage lives.

One possibility that is glaringly absent from the government's analysis is that, with an understanding of the government's ability to secure an indictment (and the government's ability to enhance the charges when it does so), Mr. Campos made an informed decision to exercise his constitutional rights. His constitutional right to be charged by a grand jury. His constitutional right to have the assistance of fully informed counsel when deciding whether to exercise his constitutional right to a trial by jury or to resolve this matter short of a jury. Mr. Campos had over two years to depart without running afoul an order of this Court; instead, he hired criminal defense counsel and, then, civil counsel. A far more reasoned conclusion to draw is that Mr. Campos anticipated that he would face an obligation to litigate these matters in the District of Oregon and he is prepared to do so. If the Court wants further reassurance, it can impose conditions that alleviate any concerns that Mr. Campos would not appear as required.

The cases cited by the government do not warrant a different conclusion. For instance, in *United States v. Aitken*, 898 F.2d 104, 105-106 (9th Cir. 1990), the court did consider the defendant's access to "extremely large sums of money" in its flight analysis (the government was seeking for forfeit over $7 million in cash), but it also considered that the defendant had "lived for the past 16 years in Asia," and that "[h]is home, family, and business are all in Hong Kong." It further observed that Aitken travels throughout

Page 6 –    DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION
TO REVOKE RELEASE ORDER

BOISE MATTHEWS LLP
121 SW Morrison St. Suite 700
Portland, OR 97204
Telephone: (503) 228-0487
Facsimile: (503) 227-5984

Asia and apparently has numerous contacts in Asia, including counties which do not extradite to the United States." *Id.* at 105.

Here, in contrast, Mr. Campos lives with his family in a home he owns in the Eastern District of California; a district that stands prepared to supervise him (working, of course, with the Pretrial Services office in this district). He has always lived in California. And against that, the government points to family members who could liquidate assets to assist him. It is not a comparable situation.

In *United States v. Townsend,* 897 F.2d 989, 995 (9th Cir. 1990), the court did consider sentencing exposure in its calculation—there, the defendants were facing 35 to 70 years in prison. The government does not address that the defendants were foreign nationals who had proffered waivers of extradition, but only from their countries of residence.

Here, in contrast, Mr. Campos has been advised about the potential charges and punishment for over two years, advised an indictment was forthcoming, and remained living and working in California with his family. *See also United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (reviewing the detention of a person alleged to be a global terrorist facing "up to 298 years in prison"); *United States v. Cisneros*, 328 F.3d 610, 618 (10th Cir. 2003) (when defendant released by magistrate she believed her potential sentence was three to four years; when the district court reviewed the release, the government presented new evidence that increased her exposure to life imprisonment); *United States v. Milan*, 4 F.3d 1038, 1046 (2d Cir. 1993) (In addition to noting that the weight of the evidence provides "a considerable incentive to flee," the court noted a mandatory minimum of at least 10 years, and three prior arrests resulting in three failures to appear, among other factors).

Likewise, the government's assertion that—now, post indictment—Mr. Campos poses a danger that the government does not allege he was during the 26 months he

Page 7 –    DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION
TO REVOKE RELEASE ORDER

BOISE MATTHEWS LLP
121 SW Morrison St. Suite 700
Portland, OR 97204
Telephone: (503) 228-0487
Facsimile: (503) 227-5984

awaited indictment—is unavailing. In those years, there are no allegations that he has participated in any criminal conduct. There are no allegations that he contacted AV1. (Except, of course, that Mr. Campos hired civil counsel to communicate with her civil counsel, a fact the government was aware of but does not mention.) The government does not allege that he made any illicit posts during that time.

During that time, Mr. Campos has been in therapy. He has also been seeing a psychiatrist who has been giving him medication to treat his compulsion. He has been making efforts to better himself and would like to continue with the treatment if allowed to be out pending the resolution of his case. He has worked. He has spent time with his family. A plan can be created that addresses concerns about his pretrial release.

The cyberstalking cases cited by the government do not compel a different conclusion. Instead, they illustrate that the inquiry as to each defendant must be individualized. In *United States v. Busbin*, 3:23-CR-00182, 2024 WL 1313880 (M.D. Tenn. Mar 27, 2024), the defendant had threatened the lawyers and judge involved in his divorce from May to October 26, 2023, and he was taken into federal custody on November 8, 2023, just two weeks later. Beyond that, he had been arrested at the state level based on his threats on October 18, 2023, and October 27, 2023, related to the posts, and had continued to make them. *Id.* During that fall, he had also been placed on a brief mental health hold, resuming threats when he was released. *Id.* One of his posts had called for an "armed protest planned by Defendant and his wife" on November 17, 2023. *Id.* The magistrate's initial decision, affirmed by the district court, that there were no combination of conditions that would alleviate the danger he posed is simply inapposite to this Court's decision.

Though information is less readily accessible in *United States v. McLearen*, 5:24-CR-122-H-BV, 2024 WL 5248155, at *1 (ND Tex Dec 30, 2024), it likewise provides little insight into how the Court should resolve *this* detention inquiry. In *McLearen*, the

Page 8 –    DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION
TO REVOKE RELEASE ORDER

BOISE MATTHEWS LLP
121 SW Morrison St. Suite 700
Portland, OR 97204
Telephone: (503) 228-0487
Facsimile: (503) 227-5984

allegations were that the defendant had been stalking the victim until "on or about the date of the indictment," which was November 13, 2024. *McLearen*, 5:24-CR-122-H-BV (ECF 3). The opinion was issued December 30, 2024. The government submitted evidence that the defendant was making direct threats to kill or injure the victim as part of the cyberstalking. *McLearen*, 2024 WL 5248155, at *1 (N.D. Tex. Dec. 30, 2024). And the Court pointed to the "sheer volume" of threatening communications to the alleged victim as a reason to believe that he would not comply with the directives of the Court to continue threatening the victim. *Id.* Here, whatever conclusions this Court draws about the seriousness of the offense, the duration of the alleged conduct, or the weight of the government's evidence, the government's proffered evidence and indictment alleges that the conduct stopped in February 2023.

The charges against Mr. Campos are serious, as is his criminal history. But when considered with the information available to the Court at this juncture, the government's presentation fails to establish by clear and convincing evidence that there is no combination of conditions that would remediate a concern that Mr. Campos poses a danger to the community, or AV1 in particular. "Only in rare cases should release be denied, and doubts regarding the propriety of release are to be resolved in favor of the defendant." *Santos-Flores*, 784 F.3d at 1090. This is not one of the rare cases in which release should be denied.

## III.    Conclusion

For the above reasons counsel requests the Court allow Mr. Campos to be out of custody, posting either a significant cash or property bond, be restricted to his home with electronic monitoring, and the other Special Conditions of Release set out by Judge Peterson (EDCA ECF 7). Mr. Campos does request that the Court allow him to be on his computer for work purposes only, as monitored by the Pretrial Release Office. Pretrial presently can install internet software on a computer to monitor use by a defendant.

Page 9 –    DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION
TO REVOKE RELEASE ORDER

BOISE MATTHEWS LLP
121 SW Morrison St. Suite 700
Portland, OR 97204
Telephone: (503) 228-0487
Facsimile: (503) 227-5984

Depending on the nature of the work, Pretrial sometimes needs to inform the defendant's employer of the monitoring. Mr. Campos is amenable to that, if it is necessary.

DATED this 1st day of May, 2025.

Respectfully submitted,

BOISE MATTHEWS LLP

*/s/ Whitney P. Boise*
WHITNEY P. BOISE, OSB No. 851570
Whitney@boisematthews.com
(503) 228-0487
Of Attorneys for Defendant
Jason David Campos

Page 10 –    DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION    **BOISE MATTHEWS LLP**
             TO REVOKE RELEASE ORDER    121 SW Morrison St. Suite 700
                                         Portland, OR 97204
                                         Telephone: (503) 228-0487
                                         Facsimile: (503) 227-5984